RECORD NO. 14-4936

In The

# United States Court of Appeals

## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

### KELVIN BROWN, a/k/a Doom,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NEWPORT NEWS**

———————

**BRIEF OF APPELLANT**

———————

Steven P. Hanna
ATTORNEY AT LAW
The 21 Professional Center
2025 East Main Street, Suite 116
Richmond, Virginia 23223
(804) 643-3979

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    Use of Alias . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Judicial Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            3.    Sufficiency of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1.    Use of Alias . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    Judicial Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    Sufficiency of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**CASES**</u>

*Anders v. California*,
  386 U.S. 739, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) . . . . . . . . . . . . . . . 1

*In re Aircrash in Bali, Indonesia*,
  871 F.2d 812 (C.A. 9, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jackson v. Virginia*,
  443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) . . . . . . . . . . . . . . 13

*Kennedy v. Los Angeles Police Dept.*,
  901 F.2d 702 (C.A. 9, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pollard v. Fennell*,
  400 F.2d 421 (4th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Shad v. Dean Witter Reynolds, Inc.*,
  799 F.2d 525 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Delpit*,
  94 F.3d 1134 (C.A. 8, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Harris*,
  501 F.2d 1 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>**CONSTITUTIONAL PROVISION**</u>

U.S. Const. amend VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>**STATUTES**</u>

18 U.S.C. § 922(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT OF JURISDICTION

The district court has jurisdiction over this matter pursuant to 18 U.S.C.

§ 3231.  This court has jurisdiction to hear this matter pursuant to 28 U.S.C.

§ 3742(a).

## STATEMENT OF THE ISSUES

I.      Whether the district court errred in overruling the Defendant's
        Motion for Judgment of Acquittal given the lack of evidence
        introduced against the defendant and the admitted self-interests
        of material witnesses.

II.     Whether the district court erred in allowing the use of the defendant's
        alias before the jury.

III.    Whether the district court committed judicial misconduct with its
        numerous negative comments directed at the defendant in the
        presence of the jury.

Counsel is filing the appellant's brief in accordance with *Anders v.*

*California*, 386 U.S. 739, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

Counsel herein certifies that he has reviewed the entire record including the

Second Superseding Indictment, pretrial motions and orders, trial transcripts, and

Judgment in a Criminal Case.

Counsel and the appellant have conferred and identified the issues for

appeal.  A copy of the brief was sent to the appellant.  Counsel has advised the

appellant that he has the right to raise any additional issues within a reasonable

time.

## STATEMENT OF THE CASE

On July 30, 2014, after a seven-day jury trial, the defendant, Kelvin Brown, was found guilty of Count 1 charging him with drug conspiracy in violation of 21 U.S.C. § 846, Count 6 charging him with distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Count 8 charging him with distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Count 10 charging him with possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Counts 9 and 11 charging him with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 922(c), and Count 12 charging him with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He was sentenced to Three hundred twenty-seven (327) months on Count 1, sixty (60) months on Counts 6, 8, and 10 to run concurrent with Count 1, sixty (60) months on Count 9 to be served consecutive to Count 1, three-hundred (300) months on Count 11 to be served consecutive to Counts 1 and 9, and a term of one hundred twenty (120) months on Count 12, to run concurrent with Count 1.

Statement of the Facts.

The defendant filed a Motion In Limine To Exclude Evidence of Nicknames on February 12, 2014.  (Doc. #74).  The defendant was indicted as Kelvin Brown, a/k/a "Doom".  On March 6, 2014, the district court issued an Opinion and Order

Denying Defendant's Motion In Limine to Exclude Evidence of Nicknames. (Doc. # 92).

The defendant demanded to represent himself. Bruce C. Sams was appointed as standby counsel. The jury trial commenced on July 22, 2014 and was concluded on July 30, 2014.

The government's first witness was Jacqueline Rodriguez. She stated she was given an immunity letter by the government. (Tr. p. 31.) She stated that in 2013 she was the night auditor at the Jamison Inn in Newport News, Virginia. (Tr. p. 32). She was a user of cocaine and marijuana at that time. (Tr. p. 33). While working there she started a relationship with Michael Helmick who was also a drug user. (Tr. p. 33). Through Mr. Helmick she meet the defendant whom she identified as "Doom". (Tr. p. 34). She had a contact number on her cell phone associated with the defendant. (Tr. p. 35).

On June 15, 2013, she stated she was with the defendant in Room 305 of the Inn. (Tr. p. 39). She saw various items in the room including a gun. (Tr. p. 39). During the time frame of knowing the defendant she stated he supplied her with cocaine and she bought cocaine from him several times per week. (Tr. p. 44). This went on for a couple of months. (Tr. p. 45). She would purchase the cocaine from the defendant where he lived or they would meet somewhere. (Tr. p. 45).

She stated she gave the defendant a ride one time to conduct a drug sale in Hampton. (Tr. p. 45). She was rewarded by being given cocaine. (Tr. p. 46).

Later in 2013 she became an informant for the FBI after she was arrested on drug charges. (Tr. pp. 46-48). She received payments of $140 and $300 to buy drugs from the defendant. (Tr. p. 48). She bought half a gram of cocaine from the defendant at his house in Newport News. (Tr. p. 51). She again purchased cocaine from the defendant in Newport News for $50. (Tr. p. 55). There were text messages and communications by cell phone between she and the defendant discussing cocaine. (Tr. pp. 59-62).

The government called Detective James Bolden. He was assigned to the Gang Enforcement Unit of the Newport News Police Department. (Tr. p. 90). A search warrant was issued with the defendant being the target and the residence at 494 Crossings Court, Apartment 495. (Tr. p. 105). The search warrant was executed on September 13, 2013 at 4:53 a.m. (Tr. p. 106). The front door was completely blocked and a mechanical breach could not open it. (Tr. p. 110). Access was eventually secured and a large couch was found blocking the front door. (Tr. p. 111). The defendant, Torianna Simmons, and a younger female were in the residence, all of whom exited. (Tr. p. 114). A firearm was located on the couch and cocaine was located in the residence. (Tr. p. 116).

The government called Detective Michael Call. He participated in the controlled buy of Ms. Rodriguez and the defendant on August 29, 2013 at the Crossings Court apartments. (Tr. p. 133). He filmed the operation from a Chevy minivan. (Tr. pp. 134-136).

The government called Detective Timothy Scott. He was involved with three controlled drug buys between Ms. Rodriguez and the defendant. (Tr. p. 141). After each buy he transported the drugs back to the Organized Crime Division, performed a field test for cocaine, and placed them into Property and Evidence. (Tr. p. 142). The first controlled buy was on August 27, 2013 which took place at 494 Crossings Court, Apartment 35, in Newport News. (Tr. p. 142). The next controlled buy was on August 29, 2013 at the same location with Ms. Rodriguez. (Tr. pp. 144-145). She gave the detective a DVD which contained a baggie of suspected cocaine. (Tr. p. 145). The third controlled buy was on September 9, 2013 at the same location with Ms. Rodriguez. (Tr. p. 146).

The government called Officer James Goode. He participated in the execution of the search warrant and seized several cell phones. (Tr. p. 184). One such phone was an LG cell phone with various contact information in it and messages of purported drug activity. (Tr. pp. 187-189).

The government called Torianna Simmons. Her address at Mariners Landing on September 13, 2013 was 494 Crossings Court, # 35. (Tr. pp. 215-

216). She met the defendant in October or November, 2012. (Tr. p. 213). She eventually developed an intimate relationship with the defendant. (Tr. p. 217). She was present at the above address when it was searched on September 13, 2013. (Tr. p. 218). She stated that the firearm found in the apartment was not hers. (Tr. p. 218). She stated that her daughter was also there but the firearm was not hers. (Tr. pp. 218-219).

The government called Michael Bethel. He entered a guilty plea to multiple felonies and received a sentence of 72 months. (Tr. pp. 258-259). In exchange for his testimony he was hoping to get a time reduction. (Tr. pp. 260). He was delivered crack cocaine for resale in late 2007 and July, 2008 from Rico Wilson. (Tr. p. 264). He stated that Wilson delivered crack cocaine to the defendant for resale. (Tr. pp. 264-266). In another phase of the investigation, 2008 and 2009, he was paid $500 for cooperating with the police. (Tr. p. 279). He also received various benefits for reduced charges which he incurred. (Tr. pp. 279-280). He acted as a middle man between Wilson and the defendant. (Tr. p. 281). On June 2, 2013, he was with Wilson who went to meet the defendant. (Tr. pp. 282-283). At that time Wilson delivered 72 grams of crack cocaine to the defendant at the apartment complex in Mariners Landing. (Tr. pp. 283-284).

A series of comments were made by the court to the defendant and a series of exchanges were made between the court and the defendant in the presence of the jury.  The following exchange took place:

By Mr. Brown:

Q.    Have any of these people ever called or texted you while they were with Mr. Brown or in Mr. Brown's company?

The Court: Well, wait a minute.  That's too broad a question.

First you're going to ask whether any of these people texted you, okay?  That's the first question.  You can't ask but one question at a time, Mr. Brown.  You can't ask two questions, because then we don't know what the answer is.

So the question which first I'll allow her to answer is, did any of Mr. Brown's friends ever text you to get a room that you know were Mr. Brown's friends, if you remember.

The Witness: Not that I remember, sir.

The Court: Okay.  Let's move along Mr. Brown.

(Tr. p. 74)

The following exchange took place:

By Mr. Brown:

Q.    How many people have you illegally rented rooms to?

The Court: Mr. Brown, let's move on to something that's important, okay?

The Defendant: Okay.  Your Honor, I was getting to a point.  It was a line of questioning.

7

The Court: What is illegal about renting a room?

By Mr. Brown:

Q.  Not illegal like –

The Court: Are you talking about – where has anybody ever talked about illegally renting a room?

The Defendant: Well, without Ids or whatnot.

The Court: Well, you're assuming it's illegal.  You've got to prove it.

Now, you can't just come in and say, "You did this illegally." What was illegal?  I'll allow you to tell me.  What do you think was illegal?

The Defendant: I didn't mean illegal then, I meant however she was trying to put it; without ID, whatever, like she alleges.

The Court: You can't rent a room without an ID card?  Is that illegal?  What law is that?  You know, let's get on with the case, Mr. Brown.

Excuse me, ladies and gentlemen.  I may be a bit impatient at times, but I want to move this case along, okay?

(Tr. p. 75).

The following exchange took place:

The Court: She made a statement.  All right.  You can ask her a question about, "Did you on such-and-such an occasion make the following statement," if she never sold it at that time.

Is that what's in there, Mr. Wheatley?  I haven't looked at it.

Mr. Wheatley: May I read it aloud?

8

The Court: No, don't – just give me the thing, will you?

Excuse me for being frustrated, ladies and gentlemen.

Just hand me the statement.  I'll know where I'm going.  (Pause in proceedings).

The Court: You can ask if she made that particular statement to detectives - - whatever their names were - - on - - what is it, August the 13th?

The Defendant: August 13, 2013.

The Court: Go ahead.

By Mr. Brown:

Q.      Have you ever made that statement to the detectives?

The Court: No, that's not what I told you to ask her.  Yes, she made a statement to the detectives.

Let's move along, Mr. Brown, please.  I'm allowing you to ask what was told to the people by - - you can quote exactly what's in there, "Did you on such-and-such a date say the following" - -

Q.      On August 13, 2013, did you admit to giving your boyfriend money to flip drugs for you, sell drugs for you?

A.      Yes.

The Court: What's that got to do with this case?

(Tr. pp. 84-85).

Outside of the presence of the jury the following exchange took place:

The Court: All right. Now, Mr. Brown, when you're using a statement - - and I'll tell you this - - you can use a statement; "On such-and-such a day did you make the following" - - "did you make a statement to detectives" - - and she gave you the two names - - "and in that statement did you say the following," if she's denied that - - if she's denied what she said. Do you see the point, Mr. Brown?

The Defendant: I don't see the point, but I don't think I'm getting a fair trial, Your Honor.

The Defendant: I thought you said I was going to get a fair trial.

The Court: I beg your pardon?

The Defendant: I thought you said I was going to get a fair trial. I don't feel this is a fair trial. I thought you said I was going to get a fair trial.

The Court: You're getting a fair trial, Mr. Brown.

The Defendant: I'm not getting a fair trial.

The Court: Well, what's unfair about it, sir? You tell me.

The Defendant: You're treating me biased because I'm a pro se defendant, I think. I think you just - - you berate me in front of the jury, you put me down in front of the jury, not even looking at me like - - I guess you're trying to show incompetence in front of the jury. So it's already giving the prosecutor a one-up. It's already bad enough I'm representing myself, but then you're putting me down in front of the jury.

(Tr. pp. 87-88).

The following exchange took place:

By Mr. Brown:

Q.      All right.  From the controlled buys - - was Mr. Brown's DNA found on any of the drugs conducted from the controlled buys?

A.      I cannot testify to that.  I did not collect any DNA from those items.

Q.      But you did collect DNA from Mr. Brown, though, right?

A.      Yes I did.

Q.      But you didn't collect it from the evidence.

A.      I did not, no.

        The Court: We said that.  That's it.  Move along.  (Tr. pp. 129-130).

        The following exchange took place during the cross-examination of Mr. Bethel:

Q.      On March 5th you were interviewed - -

        The Court: On May 6th, 2009, or March 5th?

        The Defendant: It's March 5th.  I apologize, Your Honor.  He's got two different dates on here.

        The Court: I don't care.  Just get the one - - whatever date it is, let's establish that.

By Mr. Brown:

Q.      All right.  On March 5th, 2009, were you interviewed by Detective - - Master Police Detective D. R. Snyder about an incident that happened in Bellwood?

11

The Court: Is it an incident that's before the Court at this time? Is it something to do with the testimony he's already given?

The Defendant: Impeachment. I'm going to connect the dots, Your Honor.

The Court: Is it about anything that he testified to on direct examination?

The Defendant: No, Your Honor.

The Court: That's wonderful.

(Tr. pp. 304-305).

## SUMMARY OF ARGUMENT

The trial court erred in admitting the alias of "Doom" during the course of the trial. The trial court erred is overruling the defendant's Motion for Judgment of Acquittal as the evidence was insufficient to permit a jury to convict the defendant of the multiple counts. The trial court committed judicial misconduct and thereby deprived the defendant of his right to a fair trial by constantly berating and belittling him in the presence of the jury.

## ARGUMENT

The trial court erred in admitting the alias of "Doom" during the course of the trial. The trial court erred is overruling the defendant's Motion for Judgment of Acquittal as the evidence was insufficient to permit a jury to convict the defendant of the multiple counts. The trial court committed judicial misconduct

and thereby deprived the defendant of his right to a fair trial by constantly berating and belittling him in the presence of the jury.

A.    <u>Standard of Review</u>.

1.    <u>Use of Alias</u>

It has been held that reviewing courts, "[w]ill not overturn a trial court's decision concerning the admissibility of evidence absent abuse of discretion." *United States v. Delpit*, 94 F.3d 1134, 1146 (C.A. 8, 1996).

2.    <u>Judicial Misconduct</u>

In order to aid the jury in reaching a just conclusion, it is within the trial court's discretion to call attention to evidence it believes important. *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 815 (C.A. 9, 1989), citing *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986).

3.    <u>Sufficiency of Evidence</u>

In determining the sufficiency of the evidence, the appropriate standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

B.    <u>Argument</u>.

1.    <u>Use of alias</u>

The Motion In Limine and Brief in Support to Exclude Evidence of Nicknames is incorporated and referenced in its entirety.  It goes without saying that nothing positive can come from the use of the name "Doom" in a court of law. The defendant has a name.  His name is Kelvin Brown.  The prejudicial value of the use of the alias far outweighed its probative value, especially given the nature of the offense.  If the nature of the charges involved a homicide or some other acts of violence then the use of the alias "Doom" would indeed have a proper probative value since the name inherently bears a relationship to the nature of the offenses. Such does not exist here.  The nature of the charges involved drugs and possession of firearms.  Note that Mr. Brown was never accused of actually using or threatening to use any firearm nor committing any acts of violence.  There was simply no reason why the witnesses and other participants simply could not have referred to the defendant as either "Mr. Brown" or "the defendant".  As such the Motion In Limine should have been granted and the use of the nickname "Doom" should have been excluded.

2.    <u>Judicial Misconduct</u>

The Sixth Amendment of the United States Constitution guarantees a fair and impartial trial.  This court has held that, ". . . the district judge is the governor

14

of the trial." *Pollard v. Fennell*, 400 F.2d 421 (4th Cir. 1968).  This court further

address a district judge's role, "As the only disinterested lawyer whose only

interest is to see that justice is done, and especially a one who, in the eyes of the

jury, occupies a position of preeminence and special persuasiveness, the district

judge must be assiduous in performing his function as governor of the trial

dispassionately, fairly, and impartially." *Id*. at 424.  In citing *Pollard*, courts have

further stated that, "[A] trial court must be ever mindful of the sensitive role it

plays in a jury trial and avoid even the appearance of advocacy or partiality."

*Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 709 (C.A. 9, 1990), citing

*United States v. Harris*, 501 F.2d 1, 10 (9th Cir. 1974).

It should be readily apparent upon even the most cursory reading of the

transcript that the trial judge did not especially care for the defendant, to be it

mildly.  *Pro se* defendants are certainly a challenge and can try the patience of Job

but the court should have maintained its professionalism and risen to the occasion.

Mr. Brown was right.  He did not get a fair trial because the judge repeatedly

berated and belittled him in the presence of the jury.  The record is replete with

examples of the judge simply interjecting himself in a line of questioning by Mr.

Brown on his cross-examination.[1]  It should be noted that the government

frequently did not raise an objection, the court simply took it upon itself to

interject.  At times the court was argumentative with Mr. Brown, condescending to

Mr. Brown, and patently dismissive of Mr. Brown.  Take the following exchange

for example:

> "The Court: Is it about anything that he testified to on direct examination?
>
> The Defendant: No, Your Honor.
>
> The Court: That's wonderful."

It was obviously a snide remark at Mr. Brown's expense.  Why would any

court at any time do this?  There is no need for it, it shows a clear bias against Mr.

Brown, and it poisons the courtroom atmosphere.  However, there was more as

evidenced by this example:

> "The Court: On May 6th, 2009, or March 5th?
>
> The Defendant: It's March 5th.  I apologize, Your Honor.  He's got two different dates on here.
>
> The Court: I don't care.  Just get the one - - whatever date it is, let's establish that."

---

[1]It is especially interesting how the court repeatedly interjected itself in Mr. Brown's cross-examination but repeatedly permitted the government to introduce hearsay and testimony and conclusions from witnesses without foundation among other evidentiary issues.

The court does not care?  Really?  Mr. Brown was on trial for his life so perhaps the court should have cared.  It is extremely disturbing how a trial judge, in the middle of a trial before a jury, would say something like that to a man who is facing the very real possibility of losing his freedom for much of his natural life. The trial judge was supposed to be, ". . . the only disinterested lawyer whose only interest is to see that justice is done, and especially a one who, in the eyes of the jury, occupies a position of preeminence and special persuasiveness, the district judge must be assiduous in performing his function as governor of the trial dispassionately, fairly, and impartially."  Exactly how was a jury supposed to react to a judge who said to Mr. Brown, "I don't care."?  With comment after comment, belittlement after belittlement, the jury, viewing the trial judge as "a position of preeminence and special persuasiveness" surely had to have had their view of Mr. Brown colored.  The judge is imbued with a certain grandeur wearing his robe and sitting up higher in a beautiful and impressive setting where one must look up to view him.  This grandeur is altogether proper which is why it is even more important for the judge to be fair and impartial.  The trial judge knew he had taken it too far and the record has numerous examples of the judge apologizing to the jury for his behavior, this being one example:

> "The Court: You can't rent a room without an ID card?  Is that illegal?  What law is that?  You know, let's get on with the case, Mr. Brown.

Excuse me, ladies and gentlemen.  I may be a bit impatient at times, but I want to move this case along, okay?"

Notice how the trial judge did not give any other type of instruction to the jury to not assign any fault or blame to the parties or otherwise punish them for the proceedings.  When the trial judge repeatedly preached at and berated the defendant in front of the jury then, at a certain point, the defendant was all but convicted and, as such, was denied his Sixth Amendment right to a fair and impartial trial.

3.    <u>Sufficiency of the Evidence</u>

It is conceded that there were numerous witnesses who testified against the defendant and numerous exhibits introduced.  However, primary witnesses against the defendant, namely, Ms. Rodriguez and Mr. Bethel, were deeply in trouble with the law and were also paid informants.  Their pecuniary and legal self-interests would suggest that a reasonable jury should have disregarded their testimony.  These two witnesses were material and but for their testimony the probability is that the charges may have been dismissed.

## **CONCLUSION**

The appellant prays that this Honorable Court will grant his appeal, remand the matter back to the District Court, and order that he be granted a new trial.

## <u>ORAL ARGUMENT</u>

Counsel hereby requests oral argument.

Respectfully submitted this __1st__ day of May, 2015.


                         /s/ Steven P. Hanna

                        Steven P. Hanna, Esquire
                        Counsel for appellant
                        The 21 Professional Center
                        2025 East Main Street, Suite 116
                        Richmond, Virginia 23223
                        Telephone (804) 643-3979
                        Telefax (804) 732-3073
                        Email:  hannaesq@msn.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*4,060*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Corel WordPerfect 12*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>May 1, 2015</u>        <u>/s/ Steven P. Hanna</u>
                                                              *Attorney for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 1st day of May, 2015, I caused this Brief of

Appellant to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

|  |  |
|---|---|
| Joseph K. Wheatley | Howard J. Zlotnick |
| OFFICE OF THE U.S. ATTORNEY | OFFICE OF THE U.S. ATTORNEY |
| 1301 New York Avenue, Suite 700 | 721 Lakefront Commons, Suite 300 |
| Washington, DC  20530 | Newport News, Virginia  23606 |
| (202) 514-3517 | (757) 591-4000 |
| | |
| *Counsel for Appellee* | *Counsel for Appellee* |

I further certify that on this 1st day of May, 2015, I caused the required

copies of the Brief of Appellant to be hand filed with the Clerk of the Court. I

certify that I served, via U.S. Mail, postage prepaid, a copy of the Brief of

Appellant to the Appellant at the address below:

Kelvin Brown (Register No. 83564-083)
USP HAZELTON
U.S. Penetentiary
Post Office Box 2000
Bruceton Mills, West Virginia  26525

/s/ Steven P. Hanna
*Attorney for Appellant*